UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSERVATION FORCE, et al.,

    Plaintiffs,

        v.

KENNETH SALAZAR, in his official
capacity as Secretary of the United States
Department of the Interior, et al.,

    Defendants.

Civil Action No. 09-496 (JDB)

## MEMORANDUM OPINION

Plaintiffs -- organizations and individuals that support sustainable hunting of the Canadian wood bison -- have brought suit alleging that the Secretary of the Department of the Interior has violated several provisions of the Endangered Species Act of 1973 ("ESA" or "the Act"), 16 U.S.C. § 1531 et seq., in his treatment of that species. The Canadian wood bison is currently listed as "endangered" under the Act. In 2007, the Canadian National Wood Bison Recovery Team petitioned to "downlist" the wood bison to "threatened," but the Secretary has not yet made a final determination on the petition. Plaintiffs contend that the Secretary's failure to act on the petition violates the ESA. Several individual plaintiffs also challenge as unlawful the Secretary's failure to process their applications to import wood bison hunting trophies. For the reasons explained below, the Court will grant defendants' motion to dismiss, and will deny plaintiffs' motion for summary judgment.

## BACKGROUND

I.  **Statutory and Regulatory Background**

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tenn. Valley Auth. v. Hill, 437 U.S. 153, 180 (1978). It is intended to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). To this end, the Act directs the Secretary to classify species whose survival is in danger as "endangered" or "threatened." See 16 U.S.C. § 1533.[1]

Individuals may petition the Secretary to list, downlist, or delist species. See id. § 1533(b)(3). After receiving any such petition, the Secretary must, "[t]o the maximum extent practicable," make a finding within 90 days "as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted" ("90-day finding"). 16 U.S.C. § 1533(b)(3)(A). And "[w]ithin 12 months after receiving a petition that is found . . . to present substantial information indicating that the petitioned action may be warranted," the Secretary must determine whether the petitioned action is warranted, is not warranted, or is warranted but is precluded by pending proposals concerning other species ("12-month finding"). Id. § 1533(b)(3)(B).

The ESA also generally prohibits the importation of endangered and threatened species,

---

[1] A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20).

including hunting trophies. See id. § 1538(a)(1)(A), (c)(2); 50 C.F.R. §§ 17.21(b), 17.32. Certain species may be imported under limited circumstances, however -- such as "for scientific purposes or to enhance the propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A). Individuals seeking to import a listed species must apply for a permit and satisfy a number of application requirements. See id. § 1539(a); 50 C.F.R. §§ 17.22, 17.31(a).

## II. Factual Background

The Canadian wood bison, found in portions of northwestern Canada, was by the late 1800s hunted nearly to extinction. See 74 Fed. Reg. 5908, 5909 (Feb. 3, 2009). It was first classified as an "endangered" species in 1970 under the statutory predecessor to the ESA, and has remained so listed under the ESA. Id.

Between 2000 and 2004, the four individual plaintiffs to this action purchased wood bison hunts in Canada, which permits limited hunting of the wood bison, and each then successfully hunted a wood bison. Am. Compl. ¶¶ 15-18. With Conservation Force's assistance, they each applied to import their wood bison trophies into the United States. Am. Compl. ¶¶ 15-18. The Secretary had not processed these import permit applications by the time this action was filed.

In November 2007, the Canadian National Wood Bison Recovery Team ("the Team") petitioned the Secretary to downlist the wood bison from endangered to threatened.[2] The Team's petition stated that the wood bison's "populations are healthy," its "habitat remains plentiful," and conservation "recovery and management plans are being implemented." Id. at 5909-10. In

---

[2] Plaintiffs have no affiliation with the Team, and they do not appear to have been involved in the downlisting petition.

February 2009, the Secretary, acting through the United States Fish and Wildlife Service ("the Service"), issued a 90-day finding. This finding concluded that the Team's downlisting petition "presents substantial scientific evidence and commercial information indicating that reclassifying the wood bison from endangered to threatened may be warranted." Id. at 5910. The Secretary has not yet issued his 12-month finding on the petition.

Plaintiffs brought this action in March 2009, a month after the Secretary issued his 90-day finding. They contend that the Secretary's failure to issue a 12-month finding on the Team's downlisting petition violates the ESA. Am. Compl. at pp. 19-20, 25-28. The individual plaintiffs also claim that the Secretary's then-failure to process their applications to import wood bison hunting trophies violates both the ESA and their Due Process rights. Am. Compl. at pp. 21-24.

Plaintiffs moved for summary judgment before defendants responded to their amended complaint. Three days after plaintiffs filed their motion, the Service denied the individual plaintiffs' applications for import permits. See Defs.' Mot. to Dismiss ("Defs.' Mot.") [Docket Entry 11], Ex. 1 (permit denials). As to each application, the Service concluded that "there is insufficient evidence to support the concept that this import of a sport-hunted trophy would provide a 'conservation' benefit to the wood bison." Id. at 1. Defendants subsequently filed a motion to dismiss on jurisdictional grounds, as well as a cross-motion for summary judgment raising the same issues.

## STANDARD OF REVIEW

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiffs here -- bears the burden of establishing that the court has jurisdiction. See US Ecology,

-4-

Inc. v. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. Food and Drug Admin, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

## DISCUSSION

**I.    The 12-Month Finding**

Plaintiffs' primary contention is that the Secretary has failed to comply with the ESA's 12-month finding requirement. See 16 U.S.C. § 1533(b)(3)(B); Pls.' Mot. for Summ. J. ("Pls.' Mot.") [Docket Entry 9], at 12-15. As they point out, although the Team submitted its downlisting petition in November 2007, and the Secretary issued a 90-day finding in February 2009, the Secretary still has not issued a 12-month finding.

The Secretary contends that plaintiffs cannot challenge his failure to issue a 12-month finding, however, because they did not comply with the ESA's notice requirement. Under the Act, a prospective plaintiff must provide written notice to the Secretary at least sixty days before suing for an alleged ESA violation. See 16 U.S.C. § 1540(g)(2). This requirement is "mandatory

and jurisdictional." Research Air, Inc. v. Norton, 2006 WL 508341, at *10 (D.D.C. 2006) (citing Common Sense Salmon Recovery v. Evans, 329 F. Supp. 2d 96, 104 (D.D.C. 2004)); accord Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998).[3]

Plaintiffs submitted an intent to sue letter on January 13, 2009, more than sixty days before they filed suit. See Defs.' Mot., Ex. 2 (Intent to Sue Letter), 1. But plaintiffs' intent to sue letter lists only two complaints related to the wood bison: the Secretary's then-failure to issue a 90-day finding on the downlisting petition, and the Secretary's then-failure to process plaintiffs' applications to import wood bison trophies. See id. at 1-2.

Plaintiffs do not dispute that their intent to sue letter does not explicitly challenge the Secretary's failure to issue a 12-month finding. Plaintiffs insist, however, that their letter "made blatantly clear that Conservation Force intended to object to any further violation of ESA procedural requirements." Pls.' Opp'n to Defs.' Mots. ("Pls.' Opp'n") [Docket Entry 20], at 19-21 (citing Water Keeper Alliance v. Dep't of Def., 271 F.3d 21, 30 (1st Cir. 2001) (notice sufficient where it made "clear that [plaintiff] intended to challenge an ongoing delinquency")). But the letter did not do so. Its only reference to the Team's downlisting petition is: "This is also notice for the failure of the [Secretary] to make a timely 90-day determination on the petition to downlist the [Canadian] wood bison . . . ." Intent to Sue Letter at 2. The letter does not mention any other delinquency related to the downlisting petition. Nor is it vaguely worded, leaving ambiguous whether the objection is to the absent 90-day finding, or to delays in addressing the

---

[3] Because the ESA's notice provision is jurisdictional, the Court may address this issue without resolving the Secretary's argument that plaintiffs also lack standing to challenge his failure to issue a 12-month finding. See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (internal quotation marks omitted)).

petition more generally. Accordingly, the notice in no way "made blatantly clear" that plaintiffs intended to sue over any future procedural violations concerning the downlisting petition.[4]

It is true that, because the Secretary had not yet issued his 90-day finding when plaintiffs submitted their intent to sue letter, they could not have known whether a 12-month finding was required as to the Team's petition. See 16 U.S.C. § 1533(b)(3) (12-month finding required only where 90-day finding concludes that a petition "presents substantial information indicating that the petitioned action may be warranted"). This does not alter the analysis, however. A notice of intent to sue for the failure to issue a 90-day finding does not provide proper notice of intent to sue for the subsequent failure to issue a 12-month finding. See Friends of Animals v. Salazar, 670 F. Supp. 2d 7 (D.D.C. 2009). In Friends of Animals, the plaintiff had submitted a notice of intent to sue letter for the Secretary's failure to issue a timely 90-day finding. "Defendants had not yet missed the deadline for the twelve-month finding" when the plaintiff sent its intent to sue letter -- indeed, because there was no 90-day finding the plaintiff could not have known whether a 12-month finding would be required. Id. at 13. Thus, "admittedly and understandably, Plaintiff did not notify Defendants of its intent to sue" for the failure to issue a 12-month finding. Id. Still, the court found that the plaintiff's "failure to provide sixty-days' notice prior to bringing its claims with respect to the 12-month finding means those claims must be dismissed." Id. So too

---

[4] Plaintiffs also state, without citation, that they "had a longstanding objection to Defendants' failure to downlist." Pls.' Opp'n at 20. Accordingly, they suggest that the letter provided proper notice because it "incorporate[d] by reference . . . all the prior pleas, requests, comments by Conservation Force and those it represents and diplomatic protest by foreign nations." Intent to Sue Letter at 2; see Pls.' Opp'n at 19. But even assuming that documents incorporated by reference could ever "adequately inform the agency of the exact grievances against it," Water Keeper Alliance, 271 F.3d at 30, plaintiffs have submitted no evidence to this Court concerning their prior pleas or comments.

here, where the need for a 12-month finding remained speculative when the intent to sue letter was submitted on January 13, 2009.

Moreover, because plaintiffs' intent to sue letter did not notify the Secretary that they intended to challenge his subsequent failure to issue a 12-month finding, it would be unfair to permit this claim to proceed. "The purpose of the 60-day notice provision is to put the agencies on notice of a perceived violation of the statute and an intent to sue." Sw. Ctr. for Biological Diversity, 143 F.3d at 520 (internal quotation marks omitted). "When given notice, the agencies have an opportunity to review their actions and take corrective measures if warranted. The provision therefore provides an opportunity for settlement or other resolution of a dispute without litigation." Id. (internal quotation marks omitted). This policy is borne out here: several weeks after plaintiffs sent their intent to sue letter, the Secretary issued the very 90-day finding that plaintiffs sought. See 74 Fed. Reg. at 5910. But plaintiffs gave the Secretary no such "opportunity to review [his] actions and take corrective measures" relating to his absent 12-month finding for the wood bison. The Court therefore will dismiss plaintiffs' claim that the Secretary's failure to issue a 12-month finding violates 16 U.S.C. § 1533.[5]

The Court will also dismiss, for the same reasons, plaintiffs' additional claims that the Secretary's failure to issue a 12-month finding on the wood bison petition violates several other ESA provisions. See Pls.' Opp'n at 22-23; Am. Compl. at pp. 25-28. As explained above, plaintiffs' intent to sue letter challenged only the Secretary's failure to issue a 90-day finding and

---

[5] Of course, nothing prevents plaintiffs, after ensuring that they have provided proper statutory notice pursuant to 16 U.S.C. § 1540(g)(2), from filing an additional suit to compel the 12-month finding. The Court notes, however, that the Secretary has represented that he is able to submit a 12-month finding by September 15, 2010 -- less than four months from now. See Defs.' Mot. for Summ. J. ("Defs.' Mot.") [Docket Entry 18], at 35.

to process plaintiffs' applications to import wood bison trophies. See Intent to Sue Letter at 1-2. It did not suggest that the Secretary's failure to issue a 12-month finding violates any other ESA provisions.[6]

## II.     Plaintiffs' Permit Applications

Plaintiffs also contend that the Service's failure to process their applications to import wood bison trophies is contrary to the ESA and violates Due Process. While this litigation was pending, however, the Service denied the four individual plaintiffs' applications for import permits. Accordingly, defendants contend that these claims are moot: "Plantiffs have already obtained the specific relief -- the processing of their permit applications -- requested in their Amended Complaint." Defs.' Mot. at 13.

Plaintiffs offer two arguments in opposition. They first note that their prayer for relief seeks a declaratory judgment that "the failure to process wood bison trophy import permits pursuant to existing regulations is a violation of the ESA, APA, and Constitution." Pls.' Opp'n at 11 (citing Am. Compl. at p. 29). According to them, then, they still "have not received all of the relief they requested with regard to those claims." Id.

---

[6] Plaintiffs suggest that these additional claims concerning the 12-month finding arise not only under the ESA, but also under the APA. See Pls.' Mot. at 21-22. This would, in theory, permit such claims to avoid the ESA's notice provision. But the APA permits courts to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). Here, the ESA's citizen-suit provision provides an adequate remedy for plaintiffs' claims. See 16 U.S.C. § 1540(g)(1) (citizens may sue to enjoin violations of the ESA and to compel the Secretary to comply with his duties under the Act). Therefore, because "'review of [plaintiffs'] claim is available under the [ESA], it is not subject to review under the APA.'" Coos County Bd. of County Comm'rs v. Kempthorne, 531 F.3d 792, 810 (9th Cir. 2008) (quoting Hayes v. Whitman, 264 F.3d 1017, 1025 (10th Cir. 2001)) (emphasis removed) (second alteration in Coos County); see also Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").

This argument is unpersuasive.  "In determining whether a request for declaratory relief has become moot, 'the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, <u>of sufficient immediacy and reality to warrant the issuance of a declaratory judgment</u>.'"  <u>Conyers v. Reagan</u>, 765 F.2d 1124, 1128 (D.C. Cir. 1985) (quoting <u>Preiser v. Newkirk</u>, 422 U.S. 395, 402 (1975) (emphasis in <u>Preiser</u>)).  Now that the Service has processed plaintiffs' permit applications, the parties are no longer legally adverse to one another, and there no longer exists any immediate, actual dispute that warrants declaratory relief.  Indeed, the relief plaintiffs seek -- a declaration that a failure to act timely on permit applications is unlawful -- would be an improper advisory opinion.  See <u>Lawyer v. Dep't of Justice</u>, 521 U.S. 567, 579-80 (1997) ("The real value of the judicial pronouncement -- what makes it a proper judicial resolution of a case or controversy rather than an advisory opinion -- is in the settling of some dispute <u>which affects the behavior of the defendant towards the plaintiff</u>." (internal quotation marks omitted)).

Plaintiffs also contend that the Court may still adjudicate their permit-related claims because it was the Service's voluntary cessation of the alleged unlawful conduct -- the failure to timely process permit applications -- that rendered this case moot.  "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000) (internal quotation marks omitted).  This is so because, "while the defendant's unilateral cessation of the challenged conduct may grant the plaintiff relief, the defendant is free to return to [its] old ways -- thereby subjecting the plaintiff to the same harm but, at the same time, avoiding judicial review."  <u>Qassim v. Bush</u>, 466 F.3d 1073,

1075 (D.C. Cir. 2006) (per curiam) (internal quotation marks omitted) (alteration in original). Thus, when a defendant has voluntarily ceased the allegedly unlawful conduct, a case is moot "only if the defendant shows that: (1) 'there is no reasonable expectation . . . that the alleged violation will recur,' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Larsen v. United States Navy, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting County of L.A. v. Davis, 440 U.S. 625, 631 (1979)). Moreover, to defeat mootness the alleged violation must be reasonably expected to recur against the plaintiff, and not simply others who may one day be in his place. See Qassim, 466 F.3d at 1076.[7]

In this case, the Service can only again delay the processing of plaintiffs' import permit applications if plaintiffs again apply for such permits.[8] But there is no indication in the record that the individual plaintiffs whose permit applications have now been processed will ever hunt the wood bison (or any other listed species) again, or that they will apply to import their trophies.

And even assuming that the Service needs to show that <u>none</u> of the plaintiffs to this action -- not just those who have previously applied for import permits -- can reasonably expect to be subject to the alleged violation, it has done so. The only evidence in the record potentially relevant to any plaintiffs' future intentions regarding import permits is a declaration by John Jackson, III, plaintiffs' attorney and the founder and chairman of Conservation Force. See Pls.'

---

[7] The voluntary cessation exception arguably is not available here at all. Rather, given that plaintiffs sought to force the Service to take specific action, its processing of their import permit applications appears "more accurately characterized as the provision of appropriate relief to petitioner than as the 'cessation of illegal conduct.'" Natural Res. Def. Council, Inc. v. Nuclear Reg. Comm'n, 680 F.2d 810, 814 (D.C. Cir. 1982). Nonetheless, defendants have not raised this argument, and hence the Court will assume that the exception applies.

[8] Plaintiffs do not dispute that the processing of their permit applications has "completely and irrevocably eradicated the effects of the alleged violation." See Larsen, 525 F.3d at 4.

-11-

Opp'n, Decl. of John Jackson, III ("Jackson Decl."). Jackson's declaration states that Conservation Force "prepared and filed all the Wood Bison trophy import permits that are at issue" in this case. Jackson Decl. at ¶ 4. But while this shows Conservation Force's past efforts to obtain import permits, it offers no evidence that the organization intends to do so again.[9]

In fact, the only portions of Jackson's declaration that even arguably suggest that any plaintiffs intend to apply for import permits in the future are statements concerning the Wild Sheep Foundation and Grand Slam Club/Ovis, two organizational plaintiffs. Jackson states that the Wild Sheep Foundation's "members want to hunt the bison if, but generally only if, they can import their trophies." Jackson Decl. ¶ 9. Similarly, he offers that Grand Slam Club/Ovis "has many members who would like to hunt wood bison if, and generally only if, they are able to bring their trophy back to the United States." Id. ¶ 10.

Even making the charitable assumption that these statements alone could supply a reasonable expectation that members of the two organizations will apply for import permits in the future, however, the Court cannot consider them. Federal Rule of Civil Procedure 56(e) states that "[a] supporting or opposing affidavit [on summary judgment] must be made on personal knowledge [and] set out facts that would be admissible in evidence." And "[a]lthough the rule's directive with respect to admissibility of an affidavit's contents on summary judgment

---

[9] In their opposition to the government's motions, plaintiffs offer, without citation, that "[m]embers of Conservation Force will hunt Wood Bison in the future, and Conservation Force will again file permits on their behalf." Pls.' Opp'n at 12. But "[t]he mere arguments of counsel" -- even counsel who may have personal knowledge -- "are not evidence." Barnette v. Ridge, 2004 WL 3257071, at *6 n.6 (D.D.C. 2004); see also Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3d Cir. 1996) ("[L]egal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." (internal quotation marks omitted)).

has been liberally construed, its requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented. An affidavit based merely on information and belief is unacceptable." Londrigan v. Fed. Bureau of Investigation, 670 F.2d 1164, 1174 (D.C. Cir. 1981).

Here, Jackson's declaration offers no indication that his representations as to these two organizations' members are made from personal knowledge. Jackson does not state that he belongs to, or holds an administrative role in, either organization. Nor does he offer the source of his statements, or even how he is familiar with these groups. In short, his representations as to these two organizations' members and their intentions appear on this record to be made upon belief, not knowledge. This is inadequate. See Harris v. Gonzales, 488 F.3d 442, 446 (D.C. Cir. 2007) (the D.C. Circuit has "expressly held that affidavits based upon belief are inadequate to support a motion for summary judgment" (citing Londrigan, 670 F.2d at 1174)). Thus, the Court will not rely on paragraphs nine and ten of Jackson's declaration.[10]

Without those two paragraphs, there is nothing in the record indicating that any plaintiffs in this action intend to apply for import permits in the future.[11] And without such evidence, plaintiffs' argument in support of the voluntary cessation exception is merely that if plaintiffs apply for import permits, it is reasonably likely that the Service will not timely process those applications. But "'the mere power to reenact a challenged [policy] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must

---

[10] The Court need not address other portions of Jackson's declaration, as they do not affect the Court's mootness analysis.

[11] Given that there is no evidence that plaintiffs intend to apply for import permits, the Court need not determine whether there is a reasonable expectation that the government would delay the processing of any such applications.

be evidence indicating that the challenged [policy] likely will be reenacted.'" Larsen, 525 F.3d at 4 (quoting Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997)) (alterations in Larsen). Absent any indication that plaintiffs will again apply for import permits, there can be no evidence that the Service will delay processing plaintiffs' applications. Accordingly, the Court will deny as moot plaintiffs' claims that the Service's failure to process their import permit applications is unlawful.[12]

## **CONCLUSION**

For the reasons detailed above, the Court will grant the Secretary's motion to dismiss, and will deny plaintiffs' motion for summary judgment. The Court will also deny the Secretary's cross-motion for summary judgment as moot. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: June 7, 2010

---

[12] Plaintiffs do not argue that this case falls into the exception to the mootness doctrine for cases "capable of repetition yet evading review." See Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 321-26 (D.C. Cir. 2009). Indeed, to fall within this exception, a plaintiff must show that "there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975). As explained above, there is no such reasonable expectation here.