# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONSERVATION FORCE, et al.,

    Plaintiffs,

      v.

KENNETH SALAZAR, in his official
capacity as Secretary of the United States
Department of the Interior, et al.,

    Defendants.

Civil Action No.  09-496 (JDB)

## MEMORANDUM OPINION

Now before the Court is the motion by plaintiffs -- organizations and individuals that support sustainable hunting of the Canadian wood bison -- for attorneys' fees and costs against defendants Ken Salazar, in his official capacity as Secretary of the Interior, Rowan Gould, in his official capacity as Director of the U.S. Fish and Wildlife Service, and the U.S. Fish and Wildlife Service.  Plaintiffs seek fees pursuant to section 11(g)(4) of the Endangered Species Act of 1973 ("ESA" or "the Act"), 16 U.S.C. § 1540(g)(4), which provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  Id.  Plaintiffs seek $106,194.30 in attorneys' fees and costs pursuant to § 1540(g)(4).

Plaintiffs brought this suit in March 2009, alleging that the Secretary of the Interior had violated several provisions of the ESA in his treatment of the Canadian wood bison.  In particular, plaintiffs claimed that the Secretary violated the ESA by failing to timely act on a

petition to "downlist" the wood bison from "endangered" to "threatened." Individual plaintiffs also challenged the Secretary's failure to process their applications to import wood bison hunting trophies. On June 7, 2010, the Court denied plaintiffs' motion for summary judgment and dismissed the case, ruling that the Court lacked jurisdiction over plaintiffs' claim for the Secretary's untimely response to the downlisting petition and that the individual plaintiffs' permit processing claims were moot. Conservation Force v. Salazar, 715 F. Supp. 2d 99 (D.D.C. 2010). Now, plaintiffs seek attorneys' fees under the "catalyst" theory, which, where applicable, permits courts to award a party attorneys' fees when the party obtains, through settlement or otherwise, substantial relief prior to adjudication on the merits. For the reasons explained below, the Court will deny plaintiffs' motion for attorneys fees.

## BACKGROUND

### I.     Statutory Background

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tenn. Valley Auth. v. Hill, 437 U.S. 153, 180 (1978). It is intended to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). To this end, the Act directs the Secretary of the Interior to classify species whose survival is in danger as "endangered" or "threatened." See 16 U.S.C. § 1533.[1]

---

[1] A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20).

Individuals may petition the Secretary to list, downlist, or delist species. See id. § 1533(b)(3). After receiving any such petition, the Secretary must, "[t]o the maximum extent practicable," make a finding within 90 days "as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted" ("90-day finding"). 16 U.S.C. § 1533(b)(3)(A). And "[w]ithin 12 months after receiving a petition that is found . . . to present substantial information indicating that the petitioned action may be warranted," the Secretary must determine whether the petitioned action is warranted, is not warranted, or is warranted but is precluded by pending proposals concerning other species ("12-month finding"). Id. § 1533(b)(3)(B).

The ESA also generally prohibits the importation of endangered and threatened species, including hunting trophies. See id. § 1538(a)(1)(A), (c)(2); 50 C.F.R. §§ 17.21(b), 17.32. Certain species may be imported under limited circumstances, however -- such as "for scientific purposes or to enhance the propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A). Individuals seeking to import a listed species must apply for a permit and satisfy a number of application requirements. See id. § 1539(a); 50 C.F.R. §§ 17.22, 17.31(a).

## II.    Factual Background

In November 2007, the Canadian National Wood Bison Recovery Team ("the Team") petitioned the Secretary to downlist the wood bison from endangered to threatened.[2]  In January 2009, after the Secretary had not taken action on the petition, Plaintiffs filed a notice of intent to sue.  See Plaintiffs' Motion for Attorneys' Fees ("Pls. Mot.") [Docket Entry 25] at 7.  Plaintiffs

---

[2] Plaintiffs have no affiliation with the Team, and they do not appear to have been involved in the downlisting petition.

submitted a notice to the Secretary of their of intent to sue for (1) the Secretary's failure to make a 90-day finding and (2) the Secretary's failure to process four individual plaintiffs' trophy import permit applications, which had been pending between five and nine years.  Id. at 6-7.

On February 3, 2009, the Secretary, acting through the United States Fish and Wildlife Service ("the Service"), issued a 90-day finding.   Plaintiffs brought this action about six weeks later, in March 2009, alleging that the Secretary had violated the ESA and the Administrative Procedures Act ("APA") by failing to make the required 90-day finding and 12-month finding. Plaintiffs later amended their complaint and removed the 90-day finding claim. This Court ruled that it lacked jurisdiction over the 12-month finding claim because plaintiffs failed to comply with the ESA's sixty-day jurisdictional notice requirement.[3]

Plaintiffs also alleged that the Secretary's failure to process their applications to import wood bison hunting trophies violated the ESA, the APA and their Due Process rights.  Am. Compl. pp. 21-24.  On October 9, 2009, while this litigation was pending, the Service denied the individual plaintiffs' applications for import permits.  See Pls. Mot. at 7.  This Court dismissed as moot plaintiffs' claims that the Service's failure to process their import permits was unlawful.

## STANDARD OF REVIEW

The ESA provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. §1540(g)(4) (2000). Whether an award of attorneys' fees is "appropriate" in citizen suit cases brought under the ESA and other "appropriateness" fee-shifting statutes is

---

[3]Plaintiffs do not seek attorneys fees for the 12-month finding claim.  See Pls.' Mot. at 8; Pls. Reply [Docket Entry 31] at 10.

measured by whether a party "achiev[ed] some success, even if not major success." <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 688 (1983); <u>see also</u> <u>Sierra Club v. EPA</u>, 322 F.3d 718, 727 (D.C. Cir. 2003) (awarding fees where "[p]etitioners unquestionably received some of the relief they sought"). Hours expended on unsuccessful claims are not compensable, to the extent that they are unrelated to the plaintiff's successful claims. <u>Hensley v. Eckerheart</u>, 461 U.S. 424, 435 (1983); <u>Sierra Club v. EPA</u>, 769 F.2d 796, 801 (D.C. Cir. 1985).

"[T]he 'whenever … appropriate' standard authorizes recovery under a catalyst theory." <u>Sierra Club v. EPA</u>, 322 F.3d at 726. District courts may award fees and costs "to so-called catalysts--parties who obtain, through settlement or otherwise, substantial relief prior to adjudication on the merits." <u>Id.</u> at 719. The D.C. Circuit employs the "three thresholds" test to establish eligibility for attorneys' fees under the catalyst theory: "whether the claim was colorable rather than groundless; whether the lawsuit was a substantial rather than an insubstantial cause of the defendant's change in conduct; whether the defendant's change in conduct was motivated by the plaintiff's threat of victory rather than threat of expense." <u>Sierra Club</u>, 322 F.3d at 727 (quoting <u>Buckhannon Bd. & Care Home v. West Virginia Dep't of Health and Human Res.</u>, 532 U.S. 598, 610 (2001)).

## DISCUSSION

### I.    The 90-Day Finding

Plaintiffs assert that they are entitled to attorneys fees under the catalyst theory for their 90-day finding claim because defendants "had completely ignored the downlisting petition until prompted by [p]laintiffs' notice of intent to sue." Pls. Mot. at 8-9. On January 14, 2009, plaintiffs submitted their notice of intent to sue regarding the 90-day finding. <u>Id.</u> at 7. And

"shortly thereafter, in February 2009, the Secretary issued the '90-day' finding." Id. Plaintiffs then brought this suit on March 16, 2009. Thus, the 90-day finding claim was moot when plaintiffs filed their lawsuit, because the finding had been issued the previous month.

Under the Act, a prospective plaintiff must provide written notice to the Secretary at least sixty days before suing for an alleged ESA violation. See 16 U.S.C. § 1540(g)(2). Indeed, the sixty-day notice period provides the "opportunity for settlement or other resolution of a dispute without litigation," which, as this Court previously noted, is exactly what happened here. Conservation Force v. Salazar, 715 F. Supp. 2d at 104 (citing Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998)). To be sure, courts have awarded attorneys fees under the catalyst theory when a defendant's action, after the filing of a lawsuit, renders a claim moot. See Friends of Animals v. Salazar, 670 F. Supp. 2d 7 (D.D.C. 2010). In Friends of Animals, the court ruled that plaintiffs were eligible for attorneys fees when the Service issued its 90-day finding "the day an answer was due in [the] case . . . and approximately 14 months after such a finding was due." Id. at 15. That court found the Service's timing "sufficiently telling" that the Service "likely would not have acted on [the] petition to date but for this lawsuit." Id.

In contrast, here plaintiffs' 90-day finding claim was never properly part of this lawsuit. Plaintiffs' lawsuit could not have caused the Service to act on the 90-day finding, because, in fact, the Service had already acted weeks before the plaintiffs filed this suit. The lawsuit simply was not a substantial cause of defendant's issuance of the finding. Thus, plaintiffs' claim clearly fails the second prong of the catalyst test and plaintiffs are not entitled to attorneys fees for this claim.

## II.    <u>Permit Processing</u>

While this litigation was pending, the Service denied the four individual plaintiffs' applications for import permits. This Court then denied as moot plaintiffs' claims that the Service's failure to process their import permits was unlawful.  Plaintiffs assert that they are entitled to attorneys' fees for their permit processing claims under the catalyst theory because the litigation was a substantial cause that motivated the Service to process their long-pending permit applications.

Defendants assert, as a threshold matter, that plaintiffs' permit claims could have been brought only under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706, not the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1).  <u>See</u>  Defs.' Opp'n to Pls. Mot. ("Defs' Opp'n") [Docket Entry 28] at 10.  The ESA citizen suit provision permits "any person" to commence a civil suit "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." § 1540(g)(1)(C);  <u>see</u>  <u>Bennett v. Spear</u>, 520 U.S. 154, 173-74 (1997).  Indeed, <u>Bennett</u> clarified that the citizen-suit provisions only authorize suit against the Secretary "to compel him to perform a non-discretionary duty under section 1533." <u>Bennett</u>, 520 U.S. at 173. Citizens may not sue for "the Secretary's maladministration of the ESA" under this provision.  <u>Id.</u> at 174.

Furthermore, "when a statute grants some degree of discretion to an agency as to the timing of a required action, thereby imposing 'merely a "general duty" of timeliness,' suit should be brought as a claim for unreasonable delay under the APA."  <u>Biodiversity Legal Found. v. Norton</u>, 285 F. Supp. 2d 1, 7-8 (D.D.C. 2003);  <u>see</u>  <u>Sierra Club v. Thomas</u>, 828 F.2d 783, 791

(D.C. Cir. 1987).  Analyzing a  nearly-identical citizen suit provision in the Clean Air Act, the

Sierra Club v. Thomas court declared that "to impose a clear-cut nondiscretionary duty . . . a duty

of timeliness must 'categorically mandate' that all specified action be taken by a date-certain

deadline." 828 F.2d at 791 (quoting NRDC v. Train, 510 F.2d 692, 712 (D.C. Cir. 1975))

(emphasis in original).

Here, plaintiffs assert that the Secretary's failure to process permit applications violated

16 U.S.C. § 1539, the ESA's permit provisions.  Pls. Mot. at 11.  The ESA's citizen-suit provision

does not authorize such a claim, however.  Plaintiffs also "point[] out" that 16 U.S.C. §§ 1533(c)

& (d) provide statutory authority for the permitting regulations under the ESA.  Pls. Mot. at 12.

But the language of § 1533(d), "the Secretary shall issue such regulations as he deems

necessary," only authorizes the Secretary to issue regulations.  It does not mandate the Secretary

to issue permits.

To the extent that any duty exists under § 1533, plaintiffs still fail to identify a "clear-cut

nondiscretionary duty" that the Service must process their permit applications by a "date-certain

deadline."  Plaintiffs rely on regulatory language that states:  "[u]pon receipt of a properly

executed application for a permit, the Director shall issue the appropriate permit."  50 C.F.R. §

13.21 (emphasis added).  But plaintiffs fail to acknowledge the discretionary language that

underlies the ESA permit application procedures, where the Service states it "cannot guarantee" a

specific timeframe for action:

> The Service will process all applications as quickly as possible.  However, we
> cannot guarantee final action within the time limit you request. . . . Our processing
> time may be increased by the procedural requirements of the National
> Environmental Policy Act (NEPA), the requirement to publish a notice in the
> Federal Register requesting a 30-day public comment period when we receive

certain types of permit applications, and/or the time required for extensive consultation within the Service, with other Federal agencies, and/or State or foreign governments.

50 C.F.R. § 13.11(c).

To be sure, multi-year delays to process plaintiffs' permit applications certainly do not indicate an efficient permit processing system. However, to sue under the ESA's citizen-suit provision, plaintiffs must identify a non-discretionary, statutory duty under section 1533 to process their applications by a specific date. They cannot. Hence, the ESA citizen-suit provision does not authorize judicial review of plaintiffs' permit processing claims, and plaintiffs are not eligible for attorneys fees under the ESA's attorneys' fees provisions on those claims.

Assuming that plaintiffs could have brought the permit processing claims under the APA, they would still not be eligible to recover attorneys' fees. The APA provides for the recovery of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, which only permits fee-shifting to a "prevailing party" and does not allow recovery under the catalyst theory. See Buckhannon, 532 U.S. at 610.

## CONCLUSION

For the reasons detailed above, the Court will deny plaintiff's motion for attorneys' fees and costs. A separate Order accompanies this Memorandum Opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: November 30, 2010